**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**Case No.: 9:22-cv-8095**

CRAIG KERSH, et al.,

     Plaintiffs,

v.

CITY OF LAKE WORTH BEACH, FLA.,

     Defendant.

_____/

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION,**
**MEMORANDUM OF LAW, AND REQUEST FOR ORAL ARGUMENT**

Plaintiffs, Craig Kersh, Roy Kersh, Michael Fields, and James Soares, by and through undersigned counsel, hereby move for a preliminary injunction enjoining the Defendant, City of Lake Worth Beach ("City" or "Defendant"), from enforcing Code of Ordinances, City of Lake Worth Beach  ("City Code") §§ 15-91 and 19-14. In support of this motion, Plaintiffs state:

1.     Plaintiffs seek a preliminary injunction to enjoin enforcement of City Code §§ 15-91 and 19-14 ("Challenged Ordinances"), which are facially unconstitutional. These ordinances prohibit charitable solicitation, which is constitutionally protected expression, on traditional public fora (streets, sidewalks, and medians).

2.     There exists a substantial likelihood that Plaintiffs' facial challenges to the constitutionality of City Code §§ 15-91 and 19-14 will succeed on the merits.

3.     City Code § 15-91 ("Panhandling Ordinance") prohibits charitable solicitation under certain circumstances and in certain locations throughout the City. (ECF 1-3.) It is a content-based regulation of speech that is not narrowly tailored to meet a compelling government interest. Ordinances enacted by other cities across the country that contain identical language to the

1

Panhandling Ordinance have been struck down as unconstitutional in violation of the First Amendment of the U.S. Constitution.

4.     City Code § 19-14 ("Right of Way Ordinance") prohibits offers for sale or requests for donations, as well as hand to hand transactions with motor vehicles, in certain locations in the City. (ECF 1-4.)

5.     The Right of Way Ordinance's restriction of offers for sale or requests for charity is a content based regulation of speech that is not narrowly tailored to a compelling government interest.

6.     The Right of Way Ordinance's restriction of hand to hand transactions with motor vehicles is a content neutral regulation of speech that is not narrowly tailored to a significant government interest that leaves open ample alternative channels of communication.

7.     Ordinances like the Right of Way Ordinance have been found to violate or likely violate the First Amendment.

8.     The City has directed law enforcement officers from the Palm Beach County Sheriff's Office ("PBSO") to arrest individuals for soliciting charitable contributions on public streets, sidewalks, and medians in Lake Worth Beach.

9.     Plaintiffs C. Kersh, R. Kersh, and Fields have collectively been arrested approximately 201 times, spent 48 days in jail, and assessed approximately $18,025.24 for violating the Right of Way Ordinance.

10.     Plaintiff Soares has been warned on multiple occasions against engaging in charitable solicitation in downtown areas of the City under threat of arrest for violating the Panhandling ordinance.

11.     Plaintiffs are residents of Lake Worth Beach, Florida.  Plaintiffs do not have access to adequate sources of income, through employment or public benefits, to allow them to purchase

necessities of life including food, shelter, or permanent housing. Plaintiffs do not have a fixed address, and when they cannot find a place to sleep inside, they sleep in the woods, on public sidewalks or in other public places.

12.     Plaintiffs engage in charitable solicitation by standing on City public sidewalks, or on the medians or shoulders of public streets, in areas frequented by pedestrians, near businesses, or near intersections to communicate their messages of need and pleas for assistance.

13.     Charitable solicitation communicates Plaintiffs' need for food, money and other necessities while raising awareness about the existence of homelessness in the City and the people who are experiencing poverty. Through their requests for charity, they intend to convey that they are in need of assistance and seeking compassion for their plight. Plaintiffs do not obstruct or otherwise interfere with traffic.

14.     Plaintiffs receive food, care packages containing water, hygiene products and clothing items, or gift cards from passersby. Sometimes passersby give Plaintiffs cash. Plaintiffs are at times approached while engaging in charitable solicitation by individuals who want to talk with them about experiencing homelessness and about their life.

15.     Plaintiffs would like to ask individuals they encounter for food, money and similar necessities by soliciting on public sidewalks, in parks, and along public streets in the City but are fearful of police harassment, citation, and arrest for doing so. Plaintiffs' past experiences demonstrate that this fear is reasonable as they have all experienced these types of enforcement actions in the past for asking for charitable assistance in violation of the Challenged Ordinances.

16.     If the requested preliminary injunctive relief is not issued, then Plaintiffs and other similarly situated homeless individuals will be subjected to further loss of their First Amendment rights, continued loss of liberty due to arrest and incarceration, and will continue to be chilled in their speech. Plaintiffs therefore face irreparable harm without adequate remedy at law.

17.     Granting the relief sought will not result in the imposition of greater harm to the City and such relief is in the public interest. Sheriff's deputies remain free to enforce other laws that ensure public safety and the safe, free, and convenient flow of pedestrian and vehicular traffic. An immediate cessation of enforcement of these unconstitutional statutes will further the public interest in that it will protect and preserve the exercise of core First Amendment activity and ensure equal protection and due process of law.

18.     Plaintiffs request that the Court waive the requirement of bond in Fed. R. Civ. P. 65(c). Public interest litigation such as this is a recognized exception to the bond requirement, especially where, as here, the posting of bond would cause significant hardship to Plaintiffs and the relief sought would not pose a hardship on the Defendant.

**WHEREFORE,** Plaintiffs move this Honorable Court for an Order preliminarily enjoining the City of Lake Worth from enforcing City Code §§ 15-91 and 19-14, which violate the First Amendment to the U.S. Constitution.

## <u>MEMORANDUM OF LAW</u>

### I.     Introduction

Soliciting charitable contributions is protected speech under the First Amendment of the U.S. Constitution.  Yet, in the City of Lake Worth Beach, it is a crime for a person to ask for charitable contributions in traditional public fora such as streets, medians and sidewalks. The City has directed PBSO deputies to arrest individuals for soliciting charitable contributions under the pretense of public and traffic safety. Additionally, any hand-to-hand transaction with motor vehicles is prohibited in the City, effectively banning any panhandling activities along certain City roads. These City ordinances are enforced almost exclusively against individuals experiencing homelessness in an effort to limit their visibility or remove them entirely from the City's limits. Tellingly, these ordinances do not criminalize persons engaged in other forms of speech within the

same public fora – such as a politician asking for votes or a person asking for directions. Violation of either Ordinance is punishable by a fine not exceeding $500.00 and/or imprisonment for up to 60 days. City Code § 1-6; § 19-14(f)(2).

By singling out solicitations of donations for differential treatment, § 15-91 and § 19-14 are content-based ordinances subject to strict scrutiny.  Because the Challenged Ordinances are not narrowly tailored to any compelling government interest, nor are they the least restrictive means of advancing any interest, both Ordinances are an unconstitutional restriction of free speech in violation of the First Amendment. Moreover, any hand-to-hand transmissions between pedestrians and occupants of motor vehicles are prohibited under a separate provision of the Right of Way Ordinance, which effectively bans panhandling along the City's major roadways. This broad restriction on protected speech in a public forum is unconstitutional because it is not a reasonable time, place, and manner restriction, and is not narrowly tailored to address whatever legitimate concerns may exist about traffic and pedestrian safety.

Plaintiffs are homeless individuals who solicit charitable donations within the City. They wish to continue to engage in these activities and need to do so to contribute to their survival. The fear of arrest and prosecution, however, has significantly discouraged or hampered their ability to do so. If the Challenged Ordinances are allowed to stand, the suppression of Plaintiffs' First Amendment rights and the rights of those similarly affected will continue unabated. A preliminary injunction is, therefore, necessary to protect Plaintiffs and others from the substantial threat of irreparable injuries while their claims are pending.

## II.    Statement of Facts

### A.  Section 15-91 (Panhandling Ordinance)

Panhandling is defined as "any solicitation made in person requesting an immediate donation of money or other thing of value." (ECF 1-3, § 15-90(b)(1).) Adopted in 2014, the Panhandling

Ordinance bans such solicitation within 15 feet of sidewalk cafes, entrances or exits to commercial buildings, at bus stops or public transportation vehicles, parking lots or garages or pay stations within the City's limits. (*Id*. § 15-91(a)(1)-(7).) It further bans five behaviors deemed "aggressive" panhandling throughout the City. (*Id.* § 15-90(a)(1)-(5).)

According to the City, the Panhandling Ordinance's purpose is preserving access to and enjoyment of public spaces, protecting commercial interests, and preventing people and businesses from "disturbing or disruptive" speech.  (*Id*. at 1.) The City does not cite to or rely on any statistics, data, studies, or reports to support their justifications for the Panhandling Ordinance, nor did the City seek to address the problems it identified with less intrusive tools readily available. (*See generally id.*; *see also infra* § III(A)(2)(b).).

### B.  Section 19-14 (Right of Way Ordinance)

The Right of Way Ordinance, adopted in 2017 at the urging of PBSO, makes it a crime for any individual standing on any portion of designated right-of-ways from: 1) selling or offering for sale any thing or service of any kind; 2) seeking any donation of any kind; and 3) handing, or seeking to transmit or receive by hand, any thing or service of any kind, to any person who operates or occupies a motor vehicle of any kind. (ECF 1-4 § 19-14(A).). The prohibition on right-of-way soliciting and canvassing applies in five specified locations within the City's limits. (*Id.* § 19-14(C).) Further, "for purposes of enforcement, the above identified intersections shall include any area within one hundred (100) feet from the lateral curb or boundary line of the intersection; and shall also include the entire length of the Interstate 95 (I-95) on and off ramps at 6th Avenue South and 10th Avenue North." (*Id.*)

According to the City, the Right of Way Ordinance was adopted because "canvassers and solicitors pose a danger to themselves and the public at large by interfering with the safe movement of normal vehicular traffic" citing to: 1) a 2017 Smart Growth American report; 2) a Florida

Department of Highway Safety and Motor Vehicles 2015 Traffic Crash Statistics Report; 3) a 2008 USDOT National Highway Traffic Safety Administration report; and 4) a Palm Beach County Metropolitan Planning Organization's Bicycle and Pedestrian Safety Team commissioned study. (*Id*. §§ 19-14(B)(2)-(7).) These studies and reports do not support the City's claim that "canvassers and solicitors pose a danger to themselves and the public at large by interfering with the safe movement of normal vehicular traffic," nor did the City seek to address the problems it identified with less intrusive tools readily available. (*Id*. § 19-14(B)(1); *see also infra* § III(A)(ii)(b); III(A)(iii).).

## C. <u>Enforcement of the Challenged Ordinances</u>

Sections 15-91 and 19-14 have been enforced primarily against people soliciting charitable donations in public places. (Exs. 1-4.) These enforcement actions have resulted in Plaintiffs being arrested 201 times (C. Kersh 70 times, R. Kersh 59 times, and Fields 72 times) for violating the Right of Way Ordinance by holding signs requesting charitable donations in the City; as a result, they have collectively spent approximately 48 days in jail[1] and been assessed $18,025.24 in court costs, fees, and fines. (*Id*.; Exs. 5-7.)[2] Soares was warned under threat of arrest by PBSO deputies that he was in violation of the Panhandling Ordinance for holding a sign or making verbal requests for work on public property to truck drivers in the City.  (Ex. 4, at 2.) At least two other individuals have been arrested, jailed and assessed court costs for violations of the Panhandling Ordinance. (Ex. 8.)

---

[1] Counsel for Plaintiffs has estimated the number of days in jail using the sentence reflected in the docket for each case publicly available online from the Palm Beach County Clerk of Court's eCaseView. For those cases where the Plaintiff was sentenced to "time served" without a number of days noted in the docket, the number of days in jail was calculated by reference to the date the warrant was served, where each calendar day (or portion thereof) spent in jail is counted a single day in jail.

[2] Exhibits 5-7 are summaries submitted under Fed. R. Evid. 1006; the underlying data is available to be examined by Defendant or produced to the Court upon request.

III.    **Plaintiffs Meet the Standard for Granting a Preliminary Injunction**

A district court may issue preliminary injunctive relief when plaintiffs demonstrate: (1) there is "a substantial likelihood [they] will succeed later on the merits"; (2) they "will suffer an irreparable injury absent preliminary relief"; (3) the injury likely "outweighs any harm that its opponent will suffer as a result of an injunction"; and (4) preliminary relief would not "disserve the public interest." *Scott v. Roberts*, 612 F.2d 1279, 1290 (11th Cir. 2010).

A. <u>**Plaintiffs are Likely to Succeed on the Merits of Their First Amendment Claims.**</u>

It is firmly established that the "solicitation of charitable contributions is protected speech" under the First Amendment to the U.S. Constitution. *Riley v. Nat'l Federation of the Blind*, 487 U.S. 781, 789 (1988); s*ee also Smith v. City of Ft. Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999) ("Like other charitable solicitation, begging is speech entitled to First Amendment protection."). Moreover, the speech regulated by the Ordinances occurs within a public forum—the City's streets, roads, and medians. The Supreme Court "long ago recognized that members of the public retain strong free speech rights when they venture into public streets and parks, 'which 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009) (citation omitted). Public streets, sidewalks, and public places are considered the "archetype of a traditional public forum." *Frisby v. Schultz*, 487 U.S. 474, 480 (1988). In fact, "all public streets," *as a class*, "are properly considered traditional public fora" and "[n]o particularized inquiry into the precise nature of any street is necessary." *Id.* at 481. In the instant case, the Challenged Ordinances exclusively target speech in traditional public fora. Plaintiffs are likely to succeed in showing that §§ 15-91 and 19-14 impose unconstitutional speech restrictions, both on their face and as applied to Plaintiffs.

i. ***The Challenged Ordinances are content-based restrictions.***

The Panhandling Ordinance singles out the solicitation of contributions by banning it at certain places and imposing restrictions on how it is conducted. On its face, the Panhandling Ordinance bans requests for charity in various locations throughout the City. (ECF 1-3 § 15-90(b), 15-91(a).) Aggressive panhandling is banned throughout the City. (*Id*. § 15-90(a).) These bans apply *only* to those requesting donations or other items of value. No other type of speech, such as seeking support for political, religious or social causes, is subject to the regulations. Thus, whether the regulations and criminal penalties apply depends entirely on the content of the message.

Similarly, provisions of the Right of Way Ordinance apply to prohibit any individual standing on any portion of designated right-of-ways from offering to sell or seeking a donation of any kind. (ECF 1-4 § 19-14.) Like the Panhandling Ordinance, the Right of Way Ordinance does not apply to those communicating other types of messages to the same motorists, such as a tourist requesting directions or a political candidate seeking votes.[3]

Because the Challenged Ordinances treat those who request donations differently from those who seek to communicate other messages, they are a content-based restriction on speech and subject to strict scrutiny. The Supreme Court clarified that a law is "content-based" if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). When deciding whether a challenged law is "content-based," a court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message of the speaker." *Id*. This is so *even if* the law does not favor one viewpoint over another. *Id*. at 2230 ("a speech regulation targeted at specific subject matter is

---

[3] The Right of Way Ordinance also contains a hand to hand transmission clause similar to one deemed content-neutral by this Court. *Messina v. City of Ft. Lauderdale*, 546 F. Supp. 3d 1227, 1249 (S.D. Fla. 2021). That provision is discussed *infra* § III(A)(iii).

content-based *even if it does not discriminate among viewpoints within that subject matter*")
(emphasis added). More recently, the Supreme Court reaffirmed that speech restrictions are
content-based when they "single out any topic or subject matter for differential treatment." *City of
Austin, Tex. v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1472 (2022). Because the
Challenged Ordinances single out a single topic or subject matter—requests for donations or offers
for sale—they are presumed unconstitutional and can survive only if they satisfy strict scrutiny,
which requires that the government prove that the restriction furthers a compelling interest and is
narrowly tailored to achieve that interest by the least restrictive means. *Reed*, 156 U.S. at 171.

A substantial number of courts nationwide have applied *Reed* to strike down laws similar
to the Challenged Ordinances at issue, on the grounds that they were content-based and did not
survive strict scrutiny. *See, e.g., Fernandez v. St. Louis Cnty., Mo*., 538 F. Supp. 3d 888, 902
(E.D. Mo. 2021) (law banning people from "stand[ing] in a roadway for the purpose of soliciting
a ride, employment, charitable contribution or business from the occupant of any vehicle" was
content based and unconstitutional); *Rodgers v. Bryant*, 301 F. Supp. 3d 928, 934 (E.D. Ark. 2017)
(City failed to establish that statute singling out those creating traffic problems by asking for
charity, while not affecting those creating a traffic impediment by asking for votes for a candidate,
was narrowly tailored to achieve a compelling interest); *Homeless Helping Homeless, Inc. v. City
of Tampa*, 2016 WL 4162882, at *4-5 (M.D. Fla. 2016) (ordinance banning solicitation of
donations in specified locations in the City failed strict scrutiny); *Thayer v. City of Worcester*, 144
F. Supp. 3d 218, 226 (D. Mass. 2015) (ordinance imposing 20-foot no-panhandling buffer zones
and prohibiting aggressive panhandling was content-based and did not survive strict scrutiny);
*McLaughlin v. City of Lowell*, 140 F. Supp. 3d 177 (D. Mass. 2015) (same); *Toombs v. State of
Fla.*, 25 Fla. L. Wkly Supp. 505a (Fla. 11th Jud. Cir. 2017) (ordinance prohibiting "soliciting,
begging or panhandling" was content-based and did not survive strict scrutiny). Most recently, a

Southern District court deemed two nearly identical ordinances in Fort Lauderdale to be likely unconstitutional, issuing a preliminary injunction against their enforcement. *Messina v. City of Ft. Lauderdale, Fla.*, 546 F. Supp. 3d 1227, 1254 (S.D. Fla. 2021) (ordinances not narrowly tailored to City's purported interests as they were both over and under inclusive). Because the Challenged Ordinances are largely content-based speech restrictions, they are presumptively unconstitutional and subject to strict scrutiny. The government bears the burden of proving that the law is narrowly tailored to a compelling government interest and is the least restrictive means of advancing it.

## ii. *The Challenged Ordinances cannot withstand strict scrutiny.*

To withstand strict scrutiny, the City must prove that each of the Challenged Ordinances "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231. The City must also show that the laws are the "least restrictive means" of accomplishing that vital interest. *See U.S. v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 813 (2000) ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."). Moreover, because "'content-based regulations are presumptively invalid,'… the Government bears the burden to rebut that presumption." *Id.* at 817 (quotation omitted).

### a. The City has not advanced compelling government interests.

The City cannot meet its burden because the Challenged Ordinances do not serve a compelling government interest. The stated purpose of the Panhandling Ordinance is preserving access to and enjoyment of public spaces, protecting commercial interests, and preventing people and businesses from "disturbing or disruptive" speech. (ECF 1-3, at 1.) Similarly, the Right of Way Ordinance was adopted because "canvassers and solicitors pose a danger … by interfering with the safe movement of normal vehicular traffic." (ECF 1-4, § 19-14 (B)(1).)

The City's interest in protecting commercial interests or shielding tourists or the public at large from unwanted or undesirable speech, however, is not a compelling government interest

11

warranting a ban on all requests for charitable donations.  *See Tinker v. Des Moines Indep. Comty. Sch. Dist.*, 393 U.S. 503, 509 (1969) (speech cannot be restricted based on "mere desire to avoid ... discomfort and unpleasantness"); *McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (fact that individual using the public streets and sidewalks may encounter an "uncomfortable message" is a "virtue, not a vice" of such traditional public fora); *McLaughlin*, 140 F. Supp. 3d at 188-89 (promotion of business is at most a significant and substantial governmental interest, but not a compelling governmental interest). Protecting listeners from panhandlers, or any kind of speech they do not want to hear is not and never has been a compelling government interest. *Ohio Citizen Action v. City of Mentor-On-The-Lake*, 272 F. Supp. 2d 671, 685 (N.D. Ohio 2003) ("While the government's interest in minimizing annoyance is legitimate, it is not, in and of itself, compelling enough to form the basis for a content-based restriction on free speech.").

Furthermore, while traffic safety is a legitimate interest, neither the Supreme Court nor the Eleventh Circuit have recognized traffic safety as a compelling interest for purposes of applying strict scrutiny. *See Solantic, LLC v. City of Neptune Bch.*, 410 F.3d 1250, 1267 (11th Cir. 2005) (for purpose of challenge to content-based restriction on speech, traffic safety was not a compelling interest); *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1233-1234 (11th Cir. 2006) (in challenge to content-based restriction on speech, traffic safety was substantial but not compelling interest). *Cf. Reed*, 156 U.S. at 171 (Court assumed for sake of argument, without deciding, that traffic safety was a compelling government interest). Notably, none of the studies or reports[4] relied upon as justification for the Right of Way Ordinance identifies a single incident involving the requests or exchanges banned by the Challenged Ordinances. (ECF 1-4, at § 19-14(B), citing 2017 Smart

---

[4] The City did not rely upon any studies or reports on traffic safety prior to the adoption of the Panhandling Ordinance.

Growth Am. Report, FHSMV 2015 Fla. Traffic Crash Statistics Report, and June 2008 U.S. Dep't. of Transport. Nat'l Hwy. Traffic Safety Admin. June 2008 Nat'l. Pedestrian Crash Report).

### b. The Challenged Ordinances are not narrowly tailored.

Even if the City has asserted compelling government interests, the Challenged Ordinances fail the narrow tailoring test. Laws may fail the narrow tailoring requirement where they "burden substantially more speech than is necessary to further the government's legitimate interests[,]" and are therefore fatally over inclusive. *McCullen*, 573 U.S. at 486. Laws may also fail the narrow tailoring requirement when they are under inclusive, in that they single out a certain type of speech but do not regulate others that are equally problematic. *See Reed, 576 U.S. at 172 (*"In light of this underinclusiveness, the Town has not met its burden to prove that its Sign Code is narrowly tailored to further a compelling government interest")*; Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 802 (2011) (law restricting the sale of violent video games to minors was "wildly underinclusive" because the state "declined to restrict" other forms of media that could be equally dangerous to children, and this alone caused the law to fail strict scrutiny). The Challenged Ordinances are not narrowly tailored because they are both over and under inclusive, or otherwise prohibit conduct that is already within the ambit of existing criminal laws.

The Panhandling Ordinance is over inclusive by barring what is deemed "aggressive" panhandling requests throughout the City (ECF 1-3, § 15-90(a)(1)-(5)), and by restricting panhandling at locations that represent a broad swath of the City such as bus stops, public transportation vehicles, sidewalk cafés, automatic teller machines, and entrances or exits of commercial or governmental buildings. (*Id.* § 15-91(a)(1)-(7).) Bans on panhandling in large swaths of the city prohibit protected speech even in situations where it is not demonstrably more dangerous. *Messina*, 546 F. Supp. 3d at 1244-45; *see also Norton v. City of Springfield, Ill.*, 806 F.3d 411, 412-13 (7th Cir. 2015) (striking down a panhandling ban in "downtown historic

district"); *Homeless Helping Homeless, Inc.,* 2016 WL 4162882, at \*5 (striking down solicitation ban in "Downtown/Ybor Area Prohibited Zone"); *Thayer*, 144 F. Supp. 3d at 226 (striking down 20-foot no-panhandling zone around entrance or parking area of any bank, ATM, mass transportation facility or stop, and other public areas). Aggressive panhandling ordinances "often sweep in much more speech than is necessary to promote public safety, including speech that is entirely innocuous." *Messina*, 546 F. Supp. 3d at 1240; *see also McLaughlin*, 140 F. Supp. 3d at 194, 195 (giving panhandlers only one opportunity to convey their message, without allowing follow up, was more restrictive than necessary, and restrictions on panhandling near bus stops and ATMs were not narrowly tailored).

The Right of Way Ordinance is similarly over inclusive in that it penalizes panhandlers whose conduct is not dangerous. *Messina*, 546 F. Supp. 3d 127 at 1250; *see also Cutting v. City of Portland, Me.*, 802 F.3d 79, 82, 90 (1st Cir. 2015) (ordinance prohibiting standing on a median, which city enforced against panhandlers, was not narrowly tailored because it affected every median in the city regardless of traffic and pedestrian patterns and was thus "geographically overinclusive"); *Reynolds v. Middleton,* 779 F.3d 222, 231 (4th Cir. 2015) (ordinance prohibiting roadside solicitation, even where those activities would not be dangerous, failed narrow tailoring).

Moreover, the Challenged Ordinances are fatally under inclusive because they penalize only certain types of activities that generate an alleged safety hazard, while leaving others unregulated. For example, the Panhandling Ordinance prohibits requesting donations in any of the defined locations, but does not bar asking for a petition signature. It also prevents requests for charity at bus stops, "where constant crowds might be expected to deter dangerous conduct, but it says nothing" about such requests "in back-alleys, where there are fewer people to prevent or deter violent attacks." *Messina*, 546 F. Supp. at 1244; *see also McLaughlin*, 140 F. Supp. 3d at 191. And its aggressive panhandling provisions are also under inclusive in that they omit conduct that is

genuinely threatening. *Messina*, 546 F. Supp. 3d at 1245 (these provisions "would apply to the batterer who first asked for pennies but not to the activist who, before the assault, asked the victim to join the Communist Party or the Ku Klux Klan").

The Right of Way Ordinance is also under inclusive because it prohibits requests for charity or offers to sell but not other speech that poses just as much of a traffic hazard. *See Rodgers*, 942 F.3d at 457; *Bischoff v. Fla.*, 242 F. Supp. 2d 1226, 1257 (M.D. Fla. 2003). People holding political signs are just as likely to distract drivers—if not more so—as people holding signs requesting donations, yet these Ordinances bar requesting donations while leaving people free to hold political signs. If the City legitimately sought to promote traffic safety, it would apply to all speech that could potentially create the targeted public danger the law seeks to prevent. *See Messina*, 546 F. Supp. 3d at 1249 ("But why would it be more dangerous to stand on that crosswalk and ask for a donation than, say, to stand in that same place and talk to pedestrians about politics, religion, books, ideas, sports, or anything else?").

Nor are the Challenged Ordinances the least restrictive means of achieving the City's stated interests. Aggressive panhandling provisions that make conduct already punishable by criminal statutes subject to additional penalties because of its connection with protected speech fail the narrow tailoring requirement. *See McLaughlin*, 140 F. Supp. 3d at 193 ("The City may not deem criminal activity worse because it is conducted in combination with protected speech, and it certainly may not do so in order to send a message of public disapproval of that speech on content based grounds."); *see also Messina*, 546 F. Supp. 3d at 1245; *Thayer*, 144 F. Supp. 3d at 236-37; *Browne v. City of Grand Junction, Colo.*, 136 F. Supp. 3d 1276, 1293-94 (D. Colo. 2015). Aggressive panhandling includes approaching a person in such a manner that the person is threatened with either imminent bodily injury, continuing to request money after the person solicited has given a negative response to the initial request, touching a solicited person without

15

explicit permission, blocking a solicited person from passing, or intimidating, or compelling or forcing a solicited person to accede to demands. (ECF 1-3, § 15-90(a)(1)-(5).) These activities already are punishable through other City Ordinances, in addition to existing state criminal laws, which the City could enforce to address harmful conduct, including assault, battery and disorderly conduct. *See, e.g.*, City Code § 15-10 (prohibiting disturbing the peace of another, by violence, tumultuous or offensive demeanor, loud or unusual noise, profane, obscene or offensive language, or other conduct, calculated to provoke a breach of the peace, or by assaulting, striking, threatening or frightening another); *id.* § 15-8 (prohibiting disorderly conduct causing public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, including engaging in fighting, threatening, or violent or tumultuous behavior; making unreasonable noise or offensively coarse utterance, gesture or display or addressing abusive language to any person present; or creating a hazardous or physically offensive condition); *see also* §§ 784.03, 784.011, 877.03, Fla. Stat. (2021). The Panhandling Ordinance's imposition of harsher penalties for panhandlers than for others who commit crimes does not constitute the least restrictive means of promoting public safety.

Likewise, the Right of Way Ordinance subjects someone engaged in solicitation subject to enhanced penalties for the same conduct that is already prohibited by other City ordinances. *See, e.g.*, City Code § 19-84 (prohibiting obstruction of any vehicular right-of-way and endangering the safe movement of traffic); *id.* § 19-83 (prohibiting selling or offering for sale anything on a right-of-way); *id.* § 21-34 (prohibiting vehicles from stopping in a traffic lane or obstructing traffic). The Right of Way Ordinance is not the least restrictive means of promoting traffic safety.

Because the Challenged Ordinances are both over and under inclusive, and are not the least restrictive means of achieving any legitimate government interest, they cannot survive strict scrutiny under the First Amendment.

16

      iii.   ***The City's ban on hand-to-hand transmission with motorists does not meet intermediate scrutiny.***

The City's ban on right-of-way hand-to-hand transmissions with motorists at specified locations in the City, while content-neutral, does not pass constitutional muster. Content-neutral restrictions on the time, place, or manner of speech must still withstand intermediate scrutiny, which requires both that the regulation be narrowly tailored to serve a significant governmental interest and that it "leave open ample alternative channels for communication of the information." *McCullen,* 573 U.S. at 477; *see also Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011).

The Right of Way Ordinance prohibits "handing, or seeking to transmit or receive by hand, any thing or service of any kind, to any person who operates or occupies a motor vehicle of any kind," at specified locations in the City. (ECF 1-4 § 19-14(a).) To be narrowly tailored, the provision must not "burden more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism,* 491 U.S. 781, 799 (1989). To satisfy these requirements, the Supreme Court has held that the government "must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen*, 573 U.S. at 495. The City must show that it "seriously undertook to address the problem with less intrusive tools readily available to it." *Id*. at 486.

The City cannot satisfy this burden. As discussed *supra*, the City's reliance on studies or reports to justify its claim that right-of-way transmissions creates traffic and pedestrian safety issues fails to identify a single incident involving the requests or exchanges banned by the Right of Way Ordinance. Further, there is no data or other study cited by the City that identifies the locations included in the Right of Way Ordinance as being inherently more dangerous such that it furthers the City's interest in preventing traffic accidents. The City has not shown that it seriously undertook to address the problem by less intrusive means. In fact, one of the studies that the City

relied upon in an attempt to justify the ordinance, a study commissioned by the Palm Beach County Metropolitan Planning Organization's Bicycle and Pedestrian Safety Team (§§ 19-14(B)(2)-(7)) provided a list of detailed and well-researched countermeasures for addressing any issues related to pedestrian safety. None of the countermeasures included banning or restricting panhandling or solicitation, and the City did not attempt to address their alleged concerns through these less intrusive means. Accordingly, the prohibition on hand to hand transmissions in the Right of Way Ordinance fails to establish a sufficient nexus between the claimed interest of traffic safety and the prohibition of any protected conduct at the specified locations in the City. *See Brewer v. City of Albuquerque*, 18 F.4th 1205, 1237 (10th Cir. 2021) ("As with the statistical evidence discussed above, the anecdotes the City cites either are too generic to support the Ordinance's restrictions, or involve incidents where the nexus between the injuries described and the conduct that the Ordinance proscribes is simply too tenuous to bolster any conclusion that the City narrowly tailored the Ordinance to address real, non-speculative harms or to alleviate such harms in a direct and material way."). Moreover, the right-of-way prohibition is "under-inclusive insofar as it penalizes solicitors but not motorists." *Messina*, 546 F. Supp. 3d at 1251.

B. **Plaintiffs Will Suffer Irreparable Injury**

Ordinances that violate the First Amendment are "per se irreparable injur[ies]." *LaCroix v. Town of Ft. Myers Bch., Fla.*, No. 21-10931, 2022 WL 2311818, at *9 (11th Cir. June 28, 2022) (citation omitted). "[E]ven a temporary infringement of First Amendment rights constitutes a serious and substantial injury." *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) (citation omitted). Plaintiffs will suffer irreparable harm if an injunction is not issued. Plaintiffs have been, and continue to be, repeatedly warned, arrested, jailed, and fined for the content of their speech. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Vigue v. Shoar*, Case No.

3:19-CV-186-J-32, 2019 WL 1993551, at *2 (M.D. Fla. May 6, 2019) ("when First Amendment freedoms are at stake, courts regularly find that plaintiffs have established that they will sustain irreparable injury"). So long as the Challenged Ordinances are in effect, Defendant has unbridled discretion to use the laws to prohibit Plaintiffs' and other individuals' protected speech activity. *See Univ. Books & Videos, Inc. v. Metro. Dade Cnty*., 33 F. Supp. 2d 1364, 1373 (S.D. Fla. 1999), citing *Ne Fla. Chapter of Ass'n of Gen. Contractors of Amer. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("Because chilled speech cannot be compensated by monetary damages, an ongoing violation of the First Amendment constitutes irreparable injury."). Accordingly, the irreparable injury to Plaintiffs is clear.

C. <u>**The Threatened Injury Outweighs Any Damage to Defendant**</u>

Courts must weigh the harm that plaintiffs likely will sustain if the injunction were denied against that which the defendant will suffer if the injunction is issued. *Howard v. City of Jacksonville*, 109 F. Supp. 2d 1360, 1362 (M.D. Fla. 2000). Here, in contrast to the Plaintiffs' past and continuing harm,[5] Defendant will not suffer injury if it is prevented from enforcing restrictions on First Amendment rights. In the interim, Defendants are free to enforce other state and local laws. *See, e.g., Booher v. Marion Cnty.*, No. 507cv00282, 2007 WL 9684182, at *4 (M.D. Fla. Sept. 21, 2007); *see infra* § III(A)(ii).

D. <u>**A Preliminary Injunction is in the Public Interest.**</u>

A preliminary injunction would not adversely affect the public interest. The protection of constitutional rights is always in the public interest. *Lebron v. Wilkins*, 820 F. Supp. 2d 1273,1292 (11th Cir. 2013) ("perhaps no greater public interest exists than protecting a citizen's rights under

---

[5] Collectively, the Plaintiffs have been subjected to 48 days in jail, $18,025.24 in court costs, fees, and fines for engaging in protected speech, and continue to have their ability to exercise their First Amendment right to request charity suppressed under threat of future arrest. (Exs. 1-8).

the constitution"); *Howard*, 109 F. Supp. 2d at 1365 ("The public interest is served by the maintenance of First Amendment freedoms and could not possibly be served by the enforcement of an unconstitutional Ordinance."). Because the public has no interest in enforcing an unconstitutional speech restriction, an injunction against enforcement cannot "disserve" the public interest. *See Scott*, 612 F.3d at 1297; *see also Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 870 (11th Cir. 2020) (content-based regulations that directly penalize protected speech "meet the remaining requirements as a necessary legal consequence of our holding on the merits.").

### IV.    Waiver of the Bond Requirement

Plaintiffs request this Court waive the bond requirement under Fed. R. Civ. P. 65(c). Bond is not required where the party seeking the injunction has high probability of success, an injunction is sought against a municipality that would not incur significant cost, and requiring payment would injure the constitutional rights of the plaintiff or the public. *Univ. Books & Videos, Inc.*, 33 F. Supp. 2d at 1374. Public interest litigation is a recognized exception to the bond requirement. *Vigue*, 2019 WL 1993551, at *3. Florida District Courts have waived bond requirements in similar litigation. *See id.* (waiving bond for indigent and homeless plaintiff challenging constitutionality of state statutes regulating charitable solicitation on roadways); *Booher*, 2007 WL 9684182, at *4 (waiving bond for indigent and homeless plaintiff challenging constitutionality of county ordinance regulating charitable solicitation).

### V.    Conclusion

Plaintiffs respectfully request that this Court enjoin enforcement of §§ 15-91 and 19-14 until the present matter is resolved without requiring them to post a bond.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Fed. R. Civ. P. 78 and Local Rule 7.1(b), Plaintiffs hereby request oral argument on their Motion for a Preliminary Injunction. Oral argument will assist this Court in deciding important public rights at issue in this case regarding the loss of First Amendment freedoms and Plaintiffs' right to engage in protected speech. Counsel anticipates that 30 minutes will be sufficient for argument on this Motion.

Dated:  August 4, 2022                           Respectfully submitted,

/s/ *Simone Chriss*
**Simone Chriss**, Fla. Bar No. 124062
Simone.Chriss@southernlegal.org
**Jodi Siegel**, Fla. Bar No. 511617
Jodi.Siegel@southernlegal.org
**Chelsea Dunn**, Fla. Bar. No. 1013541
Chelsea.dunn@southernlegal.org
**Southern Legal Counsel, Inc.**
1229 NW 12th Avenue
Gainesville, FL 32601-4113
(352) 271-8890

**Sabarish P. Neelakanta**, Fla. Bar No. 26623
sab@spnlawfirm.com
**SPN Law, LLC**
The Harvey Building
224 Datura Street, Suite 904
West Palm Beach, Florida 33401
(561) 350-0369

**ATTORNEYS FOR PLAINTIFFS**